UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO.: 3:17-cr-240-J-20JBT

BERNANDINO GAWALA BOLATETE.
_____/

DEFENDANT'S MOTION TO DISMISS

Bernandino Gawala Bolatete, through counsel, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b), to dismiss the indictment. Mr. Bolatete asserts that Congress lacked authority under the Constitution to enact the National Firearms Act, 26 U.S.C. §§ 5801, *et seq.* ("NFA"), and that the NFA violates the Tenth Amendment.

The government charged Mr. Bolatete in a one-count indictment with receipt and possession of an unregistered silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871.  Doc. 14 ("Indictment").  Specifically, the Indictment alleges that Mr. Bolatete "knowingly received and possessed a device for silencing, muffling, and diminishing the report of a portable firearm as defined in 18 U.S.C. § 921(a)(24), specifically, a Knights Armament firearm silencer, not registered to the defendant in the National Firearms Registration and Transfer Record as required by 26

U.S.C. § 5841." Doc. 14 at 1.

Title 26, Section 5861(d) is unconstitutional facially and as applied to Mr. Bolatete. The NFA exceeds Congress's power to enact legislation under the Taxation Clause. The government's enforcement of criminal violations under its taxing power violates the Tenth Amendment's limitation on the federal government's authority to invade the powers reserved to the States.

### Title 26, Section 5861, is an Unconstitutional Exercise of Congress's Power to Tax and Violates the Tenth Amendment

The National Firearms Act, 26 U.S.C. § 5801, *et seq.*, is codified as part of the Internal Revenue Code. The statutes require the transferor or maker of a firearm to pay a $200.00 tax for each firearm transferred or made. *See* 26 U.S.C. §§ 5811, 5821. The statutes also provide for a central registry of all firearms, known as the National Firearms and Transfer Record. *See* 26 U.S.C. § 5841. The manufacturer, importer, maker or transferor of a firearm is required to register each firearm. *See* 26 U.S.C. § 5841(b). For purposes of the NFA, "firearm" includes a silencer. *See* 26 U.S.C. § 5845 (a).

Section 5861(d) makes it unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms

2

Registration and Transfer Record. 26 U.S.C. § 5861(d). The penalty for a violation of or failure to comply with § 5861(d) is found in § 5871, which provides for a fine of not more than $10,000 or imprisonment of not more than ten years, or both. 26 U.S.C. § 5871.

In 2002, as part of the post-9/11 omnibus legislation enacted to strengthen national security and create the Department of Homeland Security, Congress transferred responsibility for enforcement of the NFA from the Treasury Department to the Justice Department. *See* Pub. L. No. 107-296, §§ 1111, 1112(k), 116 Stat. 2135, (2002); *see also* 6 U.S.C. § 531. By doing so, Congress explicitly separated the Bureau of Alcohol, Tobacco and Firearms ("ATF") law enforcement functions from its tax and administrative functions.

The Constitution grants Congress the power to "lay and collect Taxes, Duties, Imposts and Excises . . . ." U.S. Const., Art. I, § 8, cl. 1. Using its power to tax, Congress may seek to influence conduct by levying taxes. *See Nat'l Fed. of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2596 (2012). But "Congress's ability to use its taxing power to influence conduct is not without limits." *Id.* at 2599. "There comes a time in the extension of the penalizing features of the so-called tax when it loses its

3

character as such and becomes a mere penalty with the characteristics of regulation and punishment." *Id.* at 2599-2600 (internal quotations omitted) (citing *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779 (1994), and *Bailey v. Drexel Furniture Co.*, 259 U.S. 20, 38 (1922)).

In addition, the taxing power does not give Congress a broad degree of control over individual behavior. *Id.* at 2600. Rather,

> Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more. If a tax is properly paid, the Government has no power to compel or punish individuals subject to it. . . . [I]mposition of a tax nonetheless leaves an individual with a lawful choice to do or not do a certain act, so long as he is willing to pay a tax levied on that choice.

*Id.* "Of course, individuals do not have a lawful choice not to pay a tax due, and may sometimes face prosecution for failing to do so." *Id.* at 2600, n.11. "But that does not show that the tax restricts the lawful choice whether to undertake or forgo the activity on which the tax is predicated." *Id.*

In *Drexel Furniture*, the Supreme Court addressed the constitutional validity of the federal Child Labor Tax law. The Supreme Court asked:

4

> Does this law impose a tax with only that incidental restraint and regulation which a tax must inevitably involve? Or does it regulate by the use of the so-called tax as a penalty?

*Id.* at 36. The Court considered several features of the law, including its scienter requirement and its enforcement by the Secretary of Labor (in addition to the Department of Treasury) before concluding that the law's "prohibitory and regulatory effect and purpose are palpable." *Id.* at 37. Regarding the danger presented by allowing Congress to penalize under the guise of its taxing authority, the Court explained:

> Grant the validity of this law, and all that Congress would need to do, hereafter, in seeking to take over to its control any one of the great number of subjects of public interest, jurisdiction of which the states have never parted with, and which are reserved to them by the Tenth Amendment, would be to enact a detailed measure of complete regulation of the subject and enforce it by a so-called tax upon departures from it. To give such magic to the word "tax" would be to break down all constitutional limitation of the powers of Congress and completely wipe out the sovereignty of the states.
>
> The difference between a tax and a penalty is sometimes difficult to define, and yet the consequences of the distinction in the required method of their collection often are important. Where the sovereign enacting the law has power to impose both tax and penalty, the difference between revenue production and mere regulation

> may be immaterial, but not so when one sovereign can impose a tax only, and the power of regulation rests in another.

*Id.* at 38. The Court invalidated the Child Labor Tax Law because it exceeded the scope of Congress's taxing power.

In 1937, the Supreme Court distinguished *Drexel Furniture* when determining whether a $200 annual license tax on firearm dealers under the NFA was unconstitutional because it exceeded Congress's authority under the taxing clause. *See Sonzinsky v. United States*, 300 U.S. 506, 513 (1937). The Court's holding was "limited to the question of the constitutional validity of the statute in its application under the first count in the indictment." *Id.* at 511. The first count of the indictment charged a violation of section 2 of the NFA, which required every dealer in firearms to register and pay a special excise tax of $200 per year. *Id.* The Court specifically stated that "it is unnecessary to inquire whether the different tax levied by section 3 and the regulations pertaining to it are valid."[1] *Id.* at 512. The Court held that the annual $200 tax on the firearms dealer operated as a tax and fell within Congress's taxing power.

---

[1] Then-section 3 imposed a tax of $200 on each transfer of a firearm, payable by the transferor.

6

*Id.* at 514.

Mr. Bolatete submits that *Sonzinsky* is not controlling, as its holding was limited to the constitutionality of one part of the NFA that does not present itself in Mr. Bolatete's case. *But see United States v. Spoerke*, 568 F.3d 1236, 1245 (11th Cir. 2009) (citing *Sonzinsky* and noting that the Supreme Court has upheld the NFA based on the taxation power of Congress); *United States v. Cox*, 235 F. Supp. 3d 1221, 1223 (D. Kan. 2017) (noting that the court is bound by *Sonzinsky*'s conclusion that the NFA represents a valid exercise of Congress's constitutional power to levy taxes). Mr. Bolatete's case does not involve prosecution for failure to pay an annual licensing tax for dealers, as in *Sonzinsky*. Indeed, the Court in *Sonzinsky* specifically avoided ruling on the constitutionality of section 3, the precursor to the statute requiring the silencer in Mr. Bolatete's case to be registered. In addition, unlike Sonzinsky, Mr. Bolatete is not being prosecuted for failing to pay a required tax; rather, the government is criminally prosecuting him for possessing a firearm for which someone else (the maker or transferor) was obligated to pay the tax.

Even if *Sonzinsky* controls, Mr. Bolatete asserts that subsequent

7

changes to the NFA have changed its character as a taxing statute and undermine *Sonzinsky*. He submits that the precedent should be revisited, and raises this issue to preserve it for further review. In addition, Mr. Bolatete submits that his case is distinguishable from *Sonzinsky*, and the NFA is unconstitutional as applied to him.

The penalizing features of 26 U.S.C. §§ 5861 and 5871 overwhelm the NFA. To the extent the NFA may have originally been designed or functioned as a law of taxation, it has lost its character as a taxing statute and morphed into a law of regulation and punishment. *See Drexel Furniture*, 259 U.S. at 20; *see also Kurth Ranch*, 511 U.S. at 767. Currently, the driving force behind the NFA is the criminal enforcement of possessions of firearms, *see* 26 U.S.C. § 5861, not the collection of the $200 tax on transferring or making firearms. *See* 26 U.S.C. §§ 5811, 5821. The transfer in 2002 of ATF from the Department of Treasury to the Department of Justice in the Homeland Security legislation reflects the importance of the criminal enforcement provision of the statute. As in *Drexel Furniture*, enforcement of the statute by an agency other than the Department of Treasury suggests that the so-called tax is a penalty. 259 U.S. at 37. Moreover, the NFA criminalizes possessions by recipients

of an unregistered firearm, who are not even required to pay the tax under 26 U.S.C. §§ 5811 and 5812. In other words, recipients of firearms can be criminally prosecuted for possessing an unregistered firearm, but not for failing to pay the tax on such firearm. This further emphasizes the punitive and regulatory intent and function of the statute, distancing it from any relationship to the collection of taxes. Sections 5861(d) and 5871 of Title 26 are merely punitive and constitute an unlawful exercise of the police power in violation of the Tenth Amendment.

## Conclusion

Mr. Bolatete moves to dismiss the indictment because the statute charged is an unconstitutional exercise of Congress's authority, facially and as applied. Mr. Bolatete seeks argument before the Court on this motion to further explain his position.

>Respectfully submitted,
>
>Donna Lee Elm
>Federal Defender
>
>*s/Mark Rosenblum*
>Mark Rosenblum
>Assistant Federal Defender
>Florida Bar No. 0289175
>200 West Forsyth Street
>Suite 1240
>Jacksonville, Florida 32202
>Telephone: 904-232-3039
>Fax: 904-232-1937
>E-Mail: mark_rosenblum@fd.org
>Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on April 30, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>*s/Mark Rosenblum*
>Mark Rosenblum
>Assistant Federal Defender